IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JESSIE D. CRAIG** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 09-674-DRH-PMF |
| | ) |
| **MICHAEL J. ASTRUE, Commissioner of** | ) |
| **Social Security** | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Jessie D. Craig seeks review of a final decision by the Commissioner of Social Security denying her January, 2005, applications for disability benefits and supplemental security income. Craig's applications were denied at the various levels of administrative review. An Administrative Law Judge (ALJ) conducted a hearing and reached a decision on September 3, 2008, finding that benefits would not be awarded because Craig was not disabled. That decision became final when the Appeals Council denied further review. Judicial review of the Commissioner's final decision is available under 42 U.S.C. §§ 405(g) and §1383(c)(3).

To receive disability benefits or supplemental security income, a claimant must be "disabled." A disabled person is one whose physical or mental impairments result from anatomical, physiological, or psychological abnormalities which can be demonstrated by medically acceptable clinical and laboratory diagnostic techniques and which prevent the person from performing previous work and any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A), 1382c(a)(3)(B), 1382c(a)(3)(D).

The Social Security regulations provide for a five-step sequential inquiry that must be followed in determining whether a claimant is disabled. 20 C.F.R. § 404.1520; 416.920. The Commissioner must determine in sequence: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets or equals one listed by the Commissioner, (4) whether the claimant can perform his or her past work, and (5) whether the claimant is capable of performing any work in the national economy. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000). If the inquiry proceeds to Step 4, the burden shifts to the Commissioner to demonstrate that the claimant can perform a significant number of jobs that exist in the economy. *See Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004).

The ALJ evaluated Craig's applications through the five-step sequential analysis. Initially, the ALJ found that Craig had not engaged in substantial gainful activity since January 21, 2005, the date she claimed onset of disability. The assessment of medical records revealed severe impairments, identified as insulin-dependent diabetes mellitus, obesity, degenerative disc disease of the lumbosacral spine, degenerative joint disease of both knees, and coronary heart disease. These impairments did not combine to meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ decided that Craig retained the ability to perform sedentary work activity. While this assessment did not permit a return to past jobs as a certified nurse's assistant or preschool teacher, Craig was found not disabled because she could still perform a significant number of other jobs in the national economy. Taking into account her residual capacity to perform work functions along with her age, education, work experience, and ability to communicate in the English language, the ALJ specifically identified the jobs of assembler, quality control worker, and video surveillance monitor (R. 12-26).

## I. Standard of Review

Under the Social Security Act, this Court must sustain the Commissioner's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g). The substantial evidence standard requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The court is not allowed to displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations. *See Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Even if reasonable minds could differ concerning whether a claimant is disabled, the Court must still affirm a decision that is adequately supported. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

## II. Failure to Remand for Development of Objective Medical Evidence

Plaintiff argues that the ALJ erred by failing to remand her case to the state agency for further development of the record. In particular, she feels that the ALJ should have obtained imaging reports of her knees. Defendant responds that the ALJ had no such authority, and was also not obligated to order a consultative examination.

Plaintiff's claims for benefits were based, in part, on the symptoms she experienced from knee ailments following surgery in 1998 (R. 92, 337). ALJs have a legal duty to develop a full and fair record. *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991). In general, that means collection of existing medical records for the 12-month period preceding the date of application. 20 C.F.R. § 404.1512(d). Plaintiff cites to 20 C.F.R. 404.1512(f), which explains that one or more consultative examinations will be requested if "the information we need" is not available from a treating source. This language must be read in conjunction with 20 C.F.R. § 404.1527(c)(3), which

explains that ALJs are not *required* to order additional evaluations unless the evidence already received is insufficient to support a conclusion.  20 C.F.R. § 404.1527(c)(3).

As noted above, the ALJ decided that plaintiff had degenerative disease in both of her knees and found the condition to be severe.  This finding reflects the decision that plaintiff's knee ailment and symptoms significantly restricted her ability to perform basic work functions.  20 C.F.R. § 404.1521.  The finding also suggests that the ALJ had enough information to evaluate the nature of the impairment and judge the impact on plaintiff's ability to walk, stand, sit, lift, carry, push, and pull.

Furthermore, the administrative record contains numerous notations and observations about the condition of plaintiff's knees (R. 119-20, 141, 151, 182-183, 185, 189, 192-193, 194, 196, 202-203, 207, 212, 216, 218, 221, 222, 227, 229, 231-32, 234, 252, 257-262, 264-271, 278, 324, 337, 391-394, 440-443, 445, 451, 525, 555, 560).  This information allowed a decision regarding plaintiff's disability claim.  Accordingly, the ALJ had no obligation to request or purchase more medical information before reaching a decision.

### III.    Ignoring Objective Medical Evidence

Plaintiff also argues that the ALJ ignored objective medical evidence supporting her claims for benefits.  She points out that the ALJ made incorrect statements about the evidence while evaluating her knee impairment.  After noting that plaintiff had a history of surgical repair of her knee ailment, the ALJ incorrectly wrote that "the objective medical evidence does not include any imaging (x-ray, CT scan, or MRI) of the knees" and that "there are no objective imaging reports of the claimant's knees . . . (R. 18).  The ALJ subsequently reported that the "only objective testing with regard to the claimant's knees is the range of motion testing . . . (R. 22).

The above statements overwhelmingly demonstrate that the ALJ overlooked three pieces of objective evidence in plaintiff's medical records. A radiology report from Marshal Browning Hospital revealed fluid, degenerative changes, and ossification in the left knee on July 21, 2000 (R. 525). Another radiology report from Marshall Browning Hospital revealed erosions, osteophyte formation consistent with chondromalacia and loss of joint space consistent with degenerative arthritis in the right knee on November 3, 2000 (R. 555). A report comparing MRI studies of the left knee on April 11, 2002, with images obtained by Image Technology Services in July, 2000, and January, 2001, showed areas of effusion, septation, significant narrowing, areas of cartilaginous and bony abnormal signal, slight lateral subluxation, thinning ligaments with at least a partial tear, displaced meniscus suggesting tear and possible capsular separation, and significant degeneration (R. 560).

Given the ALJ's statements, defendant's position that the ALJ did not ignore objective evidence when evaluating plaintiff's knee impairment is untenable. Defendant may also be suggesting that the evidence overlooked by the ALJ would not support a favorable decision on plaintiff's applications. The Court must decline this invitation to perform the evidence analysis role reserved to ALJs. Objective medical evidence must be considered and evaluated by the ALJ in the first instance. *See Herron v. Shalala*, 19 F.3d 329, 333-34 (7th Cir. 1994); *Edwards v. Sullivan*, 985 F.2d 334, 337 (7th Cir. 1993)(ALJ must weigh all credible medical evidence). The Court will not evaluate rationale for a decision beyond the reasons given by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)(confining review to the logic supplied by ALJ). Hence, speculation about how an ALJ might view the evidence is not a proper approach. Assuming that the objective medical evidence is insufficient to "compel" a finding that plaintiff's knee ailment satisfied the criteria for a listed joint deformity, the laboratory findings reflect a level of disease which could reasonably be expected to restrict functions and produce symptoms such as pain. A rational ALJ could certainly

view the evidence as lending support for a decision favorable to plaintiff beyond Step 2. Reversal and remand for a new decision is the correct relief in these circumstances. *See Sarchet v. Chater*, 78 F.3d 305, 308 (7th Cir. 1996)(remand required where ALJ makes a number of material, serious errors in describing the testimony which impair the disability determination).

### IV.  Failure to Consider Evidence – Leg Elevation

Plaintiff argues that the ALJ overlooked her testimony that she had to elevate her legs for periods of time during the day to relieve swelling in her ankles, as well as vocational evidence regarding the impact this kind of activity would have on a hypothetical person's job success. Defendant responds that the ALJ properly rejected the proffered medical restriction as unsupported.

When plaintiff described her daily activities, she explained that she could do a "little bit" of work, after which she would recline and elevate her feet to relieve back, leg, and ankle symptoms. She did this "a lot" during the day (R. 645-645). The vocational expert verified that a person who had a medical need to elevate legs six or seven times during the day for 15 minutes would not be a likely candidate for employment (R. 653).

The ALJ considered the testimony and rejected the suggestion that plaintiff's functional abilities fell below the range of sedentary work. The ALJ referenced several portions of the medical record as a valid rationale for this assessment. The Court finds no error in this aspect of the decision. *See Knight v. Chater*, 55 F.3d 309, 314 (7 th Cir.1995).

### V.  Conclusion

IT IS RECOMMENDED that the Commissioner's decision regarding Jesse D. Crag's January, 2005, applications for disability benefits and supplemental security income be REVERSED. This case should be remanded for a new decision consistent with this report.

SUBMITTED:   September 10, 2010   .

S/ Philip M. Frazier
PHILIP M. FRAZIER
UNITED STATES MAGISTRATE JUDGE